UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **DANIELLE RAIFSNYDER,** ) | Case No. |
| c/o David B. Malik ) | |
| **Attorney at Law** ) | **JUDGE** |
| **8437 Mayfield Rd. Suite 101** ) | |
| **Chesterland, OH  44026,** ) | |
| ) | **COMPLAINT WITH JURY** |
| ) | **DEMAND** |
| **Plaintiff,** ) | |
| v. ) | |
| ) | |
| ) | |
| **CITY OF ELYRIA** ) | |
| **131 Court Street** ) | |
| **Elyria, Ohio 44035** ) | |
| ) | |
| and ) | |
| ) | |
| ) | |
| **SERGEANT ERIC PALMER** ) | |
| **OFFICER TYLER LOESCH** ) | |
| **OFFICER ERIC GROVE** ) | |
| **OFFICER MATTHEW EHMER** ) | |
| **OFFICER ALAN KUBAS** ) | |
| **OFFICER NICHOLAS CHALKLEY** ) | |
| **JANE AND JOHN DOES #1-4** ) | |
| **JAND AND JOHN DOES #5-10** ) | |
| **c/o Elyria Police Department** ) | |
| **18 West Avenue** ) | |
| **Elyria, Ohio 44035** ) | |
| ) | |
| ) | |
| **Individually and in Their Official** ) | |
| **Capacities as Employees of the City of** ) | |
| **Elyria,** ) | |
| ) | |
| ) | |
| **Defendants.** ) | |
| ) | |
| ) | |
| ) | |
| ) | |

1

## I. PRELIMINARY STATEMENT

1. This civil rights case seeks redress for the violation of Plaintiff Danielle Raifsnyder's Fourth and Fourteenth Amendment rights. The violation of Ms. Raifsnyder's rights occurred on November 18, 2017. On that day, Elyria police officers Defendants Sergeant Palmer, Officer Loesch, Officer Grove, Officer Ehmer, Officer Kubas, and Officer Chalkley violated Ms. Raifsnyder's Fourth and Fourteenth Amendment rights when they illegally and unreasonably searched and seized her. These Defendants further violated Ms. Raifsnyder's Fourth and Fourteenth Amendment rights when they used excessive and unreasonable force while on duty when they physically assaulted Ms. Raifsnyder. There was no reason for Defendant Officers to abuse and assault Ms. Raifsnyder. These Defendant Officers' conduct amounted to an unnecessary, illegal, unreasonable, and excessive use of force to make an arrest that was not supported by probable cause. These Defendants further violated Ms. Raifsnyder's Fourth and Fourteenth Amendment rights when they illegally and unreasonably searched Ms. Raifsnyder's home. Ms. Raifsnyder brings this civil rights action to secure fair compensation and to encourage Elyria police officers to refrain from unconstitutional, unnecessary, illegal, and unreasonable searches and seizures and to encourage Elyria police officers to refrain from unconstitutional, illegal, and excessive use of force on its citizens in the future.

2. The violation of Ms. Raifsnyder's Fourth and Fourteenth Amendment rights occurred because Defendant City of Elyria and Jane and John Does #5-10 have a policy, practice, and custom of allowing Elyria police officers to illegally search, seize, and use excessive

force on its citizens to harass, embarrass, intimidate, and interrogate without having to follow the legal procedures.

3. This policy, pattern, and practice was the moving force behind the deprivation of Ms. Raifsnyder's constitutional rights.

4. Defendants Sergeant Palmer, Officer Loesch, Office Grove, Officer Ehmer, Officer Kubas, Officer Chalkley, and/or Jane and John Does #1-4's illegal and unconstitutional conduct was known, approved and ratified by Defendants City of Elyria and Jane and John Does #5-10, policy makers for the Defendant City of Elyria, who then failed to conduct a meaningful and adequate investigation into the Defendant officers' illegal conduct.

5. Defendants City of Elyria and Jane and John Does #5-10 demonstrate a pattern and practice of failing to adequately train, adequately supervise, and failing to investigate and discipline its police officers related to illegal and unconstitutional conduct.

6. The inadequate training of Elyria police officers by the Defendants City of Elyria and Jane and John Does #5-10 amounts to deliberate indifference to the rights of those individuals that come into contact with Elyria police officers.

## II. JURISDICTION

7. Jurisdiction over claims arising from Defendants' violation of the Civil Rights Act is conferred upon this Court by 28 U.S.C. §§ 1331, 1343 (3) and (4).

8. Jurisdiction over the state law claims is conferred upon this Court by 28 U.S.C. § 1367.

9. Venue is proper in this division.

## III. THE PARTIES

10. Plaintiff Danielle Raifsnyder was a resident of Lorain County, Ohio during all times relevant to this action. She brings this action on her own behalf for damages resulting from the violation of rights secured by the United States Constitution.

11. Defendant City of Elyria is a unit of local government organized under laws of the State of Ohio. Defendant City of Elyria is also a "person" under 42 U.S.C. §1983 and at all times relevant to this case acted under color of law.

12. Defendant Sergeant Eric Palmer was at all times relevant to this action an employee of the City of Elyria, Ohio police department. Defendant Palmer is sued in his individual and official capacities. Defendant Palmer is a person under 42 U.S.C. §1983 and at all times relevant to this case acted under color of state law.

13. Defendant Tyler Loesch was at all times relevant to this action an employee of the City of Elyria, Ohio police department. Defendant Loesch is sued in his individual and official capacities. Defendant Loesch is a person under 42 U.S.C. §1983 and at all times relevant to this case acted under color of state law.

14. Defendant Eric Grove was at all times relevant to this action an employee of the City of Elyria, Ohio police department. Defendant Grove is sued in his individual and official capacities. Defendant Grove is a person under 42 U.S.C. §1983 and at all times relevant to this case acted under color of state law.

15. Defendant Matthew Ehmer was at all times relevant to this action an employee of the City of Elyria, Ohio police department. Defendant Ehmer is sued in his individual and official capacities. Defendant Ehmer is a person under 42 U.S.C. §1983 and at all times relevant to this case acted under color of state law.

16. Defendant Alan Kubas was at all times relevant to this action an employee of the City of Elyria, Ohio police department. Defendant Kubas is sued in his individual and official capacities. Defendant Kubas is a person under 42 U.S.C. §1983 and at all times relevant to this case acted under color of state law.

17. Defendant Nicholas Chalkley was at all times relevant to this action an employee of the City of Elyria, Ohio police department. Defendant Chalkley is sued in his individual and official capacities. Defendant Chalkley is a person under 42 U.S.C. §1983 and at all times relevant to this case acted under color of state law.

18. Jane and John Does #1-4 were at all times relevant to this action employees of the City of Elyria, Ohio police department. They were serving as on-duty police officers on November 18, 2017. John Does #1-4 are sued in their individual and official capacities. They are persons under 42 U.S.C. §1983 and at all times relevant to this case acted under color of state laws.

19. Jane and John Does #5-10 were at all times relevant to this action policy makers for the City of Elyria. John Does #5-10 are sued in their individual and official capacities. They are persons under 42 U.S.C. §1983 and at all times relevant to this case acted under color of state laws.

## IV. FACTS

20. On November 18, 2017, Danielle Raifsnyder attended the wedding of a long-time friend.

21. Ms. Raifsnyder came to the wedding with friend and neighbor, Amanda Ware.

22. Ms. Raifsnyder was a guest at the wedding, but she was also the photographer.

23. As it got later, Ms. Ware became intoxicated and aggressively insisted that Ms. Raifsnyder leave the wedding with her.

24. Ms. Raifsnyder refused because, as the photographer, she was not able to spend time with her friend until the wedding was almost over.

25. Ms. Ware left the wedding.

26. Ms. Raifsnyder spent some time with friends at the wedding and returned to her home at 340 8th Street in Elyria, Ohio.

27. As soon as Ms. Raifsnyder arrived at her apartment door, a drunk and belligerent Amanda Ware approached her, still angry that Ms. Raifsnyder had not left the wedding with her.

28. Ms. Raifsnyder entered her apartment and Ms. Ware tried to come through the door and then a window, but eventually went back to her own apartment.

29. Minutes later, as Ms. Raifsnyder was getting ready for bed, she noticed flashing lights outside of her window so she peeked outside to see what was going on.

30. Ms. Raifsnyder was shocked and terrified to see Elyria police officers with their guns drawn and pointed at her.

31. Defendant officers told Ms. Raifsnyder that if she did not open the door, they were going to shoot her.

32. Terrified and fearing she might get shot, Ms. Raifsnyder slowly opened her door.

33. Ms. Raifsnyder reasonably asked Defendant officers why they were at her home with their guns drawn and pointed at her.

34. "Officers could see that Raifsnyder was crying and visibly shaking." (Exhibit 1, Patrol Narrative)

35. Despite this, Defendant officers ripped Ms. Raifsnyder out of her home and threw her face first into a pole outside of her door.

6

36. All six officers were males. No female officers were present.

37. Ms. Raifsnyder is 5'2" and weighs 100 pounds.

38. Defendant officers then began using unconstitutional and excessive force as they pulled Ms. Raifsnyder's dress up and aggressively groped and prodded her thighs, buttocks, and vaginal area.

39. Throughout the entire unconstitutional and unreasonable assault, Ms. Raifsnyder was crying and kept asking Defendant officers why they were doing this to her.

40. Ms. Raifsnyder, who suffers from Post-Traumatic Stress Disorder from previous sexual assaults, begged Defendant officers to stop touching her in the way they were because she felt sexually assaulted.

41. Defendant officers Loesch, Chalkley, and Grove then proceeded to illegally enter the home of Ms. Raifsnyder.

42. When Ms. Raifsnyder told Defendant officers that they did not have her permission to enter and search her home and that they needed a warrant to do so, one of the Defendant officers said, "I do what I want."

43. As Defendant officers Loesch, Chalkley, and Grove unconstitutionally and illegally searched Ms. Raifsnyder's home, the other Defendant officers handcuffed her and dragged her to a squad car.

44. At no time did any of the Defendant officers tell Ms. Raifsnyder why they were at her home with their guns drawn and pointed at her.

45. At no time did any of the Defendant officers tell Ms. Raifsnyder why they ripped her out of her home.

46. At no time did any of the Defendant officers tell Ms. Raifsnyder why they were searching her home.

47. At no time did any of the Defendant officers tell Ms. Raifsnyder why she was being handcuffed and arrested.

48. Without permission, Defendant officers ransacked Ms. Raifsnyder's home.

49. Without probable cause, Defendant officers arrested Ms. Raifsnyder.

50. It was only after Ms. Raifsnyder posted bond and came home that she discovered that another neighbor, Amanda Ware's sister Michelle Dahmous, had called the police on her.

51. "Dahmous stated that she looked across the porch, and through the open door to Raifsnyder's apartment, and observed Raifsnyder to be holding a gun black in color." (Ex. 1)

52. "Dahmous stated the Raifsnyder did not point the weapon at anybody, or make any verbal threats." (Ex. 1)

53. No gun was ever found as a result of Defendant officers' unconstitutional and illegal searches and seizure.

54. The charge of Obstruction of Official Business against Ms. Raifsnyder were dismissed on April 25, 2018 by Elyria Municipal Judge Gary C. Bennett.

55. On November 19, 2017, the day after the illegal and excessive force, Ms. Raifsnyder went to University Hospital Elyria Medical Center Emergency Department.

56. Ms. Raifsnyder was diagnosed with Ecchymosis on examination, Traumatic ecchymosis of finger, and Traumatic ecchymosis of thigh, and contusions.

57. Ms. Raifsnyder's finger had to be popped back into place in the Emergency Department.

58. On November 22, 2017, Ms. Raifsnyder woke up and due to her face being slammed into the pole by Defendant officers, could not move her jaw.

59. That same day, Ms. Raifsnyder returned to the Emergency Department and was diagnosed with contusion of jaw and strain of thoracic region.

60. The Emergency Department medical staff asked Ms. Raifsnyder who assaulted her because they had to report it to the police.

61. Ms. Raifsnyder, terrified, begged them not to call the police because, she told them, the police were the ones who assaulted her.

## V. CLAIMS

### FIRST CAUSE OF ACTION 42 U.S.C. § 1983 ILLEGAL AND UNREASONABLE SEARCH AND SEIZURE

62. Each of the paragraphs of this Complaint is incorporated as if fully restated herein.

63. Danielle Raifsnyder was subjected to an unreasonable search and seizure of her person and home in violation of the Fourth and Fourteenth Amendments to the United.

64. Ms. Raifsnyder had a right to be free from unreasonable searches and seizures under the Fourth and Fourteenth Amendments to the United States.

65. Defendants' conduct in seizing Ms. Raifsnyder without any legal justification violated Ms. Raifsnyder's rights under the Fourth and Fourteenth Amendments to the United States.

66. Defendants' conduct in searching Ms. Raifsnyder's person and home without permission, without a warrant, and without any other legal justification violated Ms. Raifsnyder's rights under the Fourth and Fourteenth Amendments to the United States.

67. Defendant officers' conduct in pulling up Ms. Raifsnyder's dress and groping her thighs, buttocks, and vaginal area without any legal justification violated Ms. Raifsnyder's rights under the Fourth and Fourteenth Amendments to the United.

## SECOND CAUSE OF ACTION 42 U.S.C. § 1983 EXCESSIVE FORCE

68. Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

69. Defendants have, under color of law, deprived Danielle Raifsnyder of rights, privileges, and immunities secured to her by the Fourth and Fourteenth Amendment to the United States Constitution, including the prohibition on excessive use of force contained in the Fourth Amendment to the United States Constitution.

70. Defendants Officers used excessive force directly on Ms. Raifsnyder, causing her injuries.

## THIRD CAUSE OF ACTION– ASSAULT AND BATTERY

71. Plaintiff incorporates and restates each of the above paragraphs as if fully rewritten herein.

72. Under Ohio law, Defendants officers' acts of touching and threats against Danielle Raifsnyder constitute assault and battery.

73. Each Defendant engaged in an unprivileged, intentional, harmful, and offensive touching of Ms. Raifsnyder.

74. Defendant officers willfully threatened to harm or touch Ms. Raifsnyder.

75. Defendants officers' assault and battery was a direct and proximate cause of Ms. Raifsnyder's permanent injuries.

76. As a direct and proximate result of the unprovoked and intentional assault and harmful and offensive touching on Ms. Raifsnyder, she suffered permanent multiple traumas,

including but not limited to Traumatic ecchymosis of the finger and thigh, contusions, contusion to the jaw, and strain of thoracic region. This assault and battery has worsened Ms. Raifsnyder's Post Traumatic Stress Disorder. Ms. Raifsnyder lost wages and will lose additional wages in the future. Ms. Raifsnyder incurred medical bills and will incur additional medical bills in the future.

### FOURTH CAUSE OF ACTION– INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

77. As a direct and proximate result of Defendant officers' acts, Ms. Raifsnyder has suffered, and will continue to suffer serious psychological pain and distress, which is serious and of a nature that no reasonable person could be expected to endure.

78. Defendant officers knew that their treatment of Ms. Raifsnyder would cause emotional distress and intended that their actions would result in serious emotional distress to Ms. Raifsnyder. Defendant officers' conduct was so extreme and outrageous as to go beyond all possible bounds of decency, and they directly and proximately caused Ms. Raifsnyder's psychic injury.

### FIFTH CAUSE OF ACTION 42 U.S.C. § 1983 MONELL CLAIM FOR DEFENDANT CITY OF ELYRIA

79. Defendants City of Elyria's and Jane and John Does #5-10's policies, practices, and customs regarding searches, seizures, arrests, and excessive force were a moving force behind the illegal search and seizure and excessive force used on Ms. Raifsnyder by Defendant officers.

80. Defendants City of Elyria and Jane and John Does #5-10 customarily allow officers to illegally search and seize and use excessive force on its citizens to harass, embarrass, intimidate, and interrogate without having to follow the legal procedures and without being held accountable or disciplined for their misconduct.

81. Defendants City of Elyria and Jane and John Does #5-10 failed to institute adequate municipal policies, procedures, and customs regarding searches and seizures and excessive force.

82. Defendants officers' illegal and unconstitutional conduct was known, approved and ratified by Defendants City of Elyria and Jane and John Does #5-10 Policy Makers for the Defendant City of Elyria who then failed to conduct a meaningful and adequate investigation into the Defendant officers' illegal search and seizure of Ms. Raifsnyder and the excessive force used on her.

83. There is a pattern and practice by Defendants City of Elyria and Jane and John Does #5-10 of failing to adequately train, adequately supervise, and failing to investigate and discipline its police officers related to illegal and unconstitutional searches and seizures.

84. The inadequate training of Elyria police officers by the Defendant City of Elyria and Jane and John Does #5-10 amounts to deliberate indifference to the rights of those individuals that come into contact with Elyria police officers.

## VI. JURY DEMAND

Plaintiff hereby demands a trial by jury of all issues triable by jury.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands that this Court:

A.      Award Plaintiff compensatory damages in an amount to be shown at trial;

B.     Plaintiff punitive damages in an amount to be shown at trial;

C.     Award Plaintiff reasonable attorney's fees, costs and disbursements;

D.     Pre and post judgment interest;

E.     Grant Plaintiff such additional relief as the Court deems just and proper.

/s/ Sara Gedeon
David B. Malik (0023763)
Sara Gedeon (0085759)
8437 Mayfield Road Suite 101
Chesterland, Ohio 44026
(440) 729-8260
(440) 490-1177
dbm50@sbcglobal.net
sgedeon1021@gmail.com

Thomas Perotti (0065788)
Perotti Law Offices LLC
The Falls Office Building
57 E Washington Street
Chagrin Falls, OH 44022
440-247-9000
440-247-9038
attorneyperotti@yahoo.com

Attorneys for Plaintiff Danielle Raifsnyder